NATIONAL LABOR RELATIONS
BOARD, Appellant,

v.

ATLANTA COCA-COLA BOTTLING
COMPANY, Inc., Atlanta, Georgia,
Appellee.

No. 18289.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1961.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick Manoli, Associate Gen. Counsel, Hans J. Lehmann, Atty., N.L.R.B., Washington, D. C., for appellant.

A. G. Cleveland, Jr., Harry J. Mehre, Jr., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

PER CURIAM.

The petition for rehearing is based on the Board's belief that the Court may have misapprehended the Board's finding as to the extent of the violation of Section 8(a) (3), National Labor Relations Act, 29 U.S.C.A. § 158(a) (3). The Court was under no misapprehension.

(1) The petition quotes the following statement from the Court's opinion: "[The] Trial Examiner, with the approval of the Board, found that all forty-seven discharges were in reprisal for the employees' union activities and in order to defeat the Union's organizing campaign." The Board then points out it did not "find" that 47 employees were laid off discriminatorily but limited its finding to 23 of 24 employees, as to whom charges had been filed.

The Court was fully aware that the Board said: "We agree with the Trial Examiner that in laying off the 20 named employees on November 15, 1957, and the 3 named employees on November 29, 1957, the Respondent violated Section 8 (a) (3) and (1) of the Act. We find, as did the Trial Examiner, that in making these layoffs the Respondent was not motivated by the economic conditions of its business and the times." This finding of discrimination as to those named in the complaint, about half of the employees discharged, is not inconsistent

with the examiner's finding that all forty-seven employees were discriminatorily discharged. On November 15, 1957, the respondent laid off 37 employees. On November 29, 1957, respondent laid off ten more employees. The trial examiner unequivocally found:

"I find therefore that Respondent discriminated in regard to the tenure of employment of all employees laid off on November 15 and November 29, 1957, excepting Clarence Lett, Jr., who was discharged for cause on December 3, 1957."

The Board stated in its decision:

"The Board has considered the Intermediate Report, the exceptions and brief, and the entire record in the case and hereby adopts the findings, conclusions and recommendations of the Trial Examiner with the following additions and modifications."

The modifications were to correct "minor inaccuracies, which do not affect [the Trial Examiner's] findings, conclusions and recommendations."

The examiner's statement, read in the context of the entire report, referred to *"all"* of the discharged employees. The statement occurs in a section of the report entitled "Concluding Findings". In the penultimate paragraph preceding the quoted statement the examiner referred collectively to *all* of the discharges as "a drastic reduction in force". In the paragraph just preceding the statement the examiner again used this term as including all the discharged employees, and it is clear that he was not just talking about the employees named in the complaint. Finally, the words immediately preceding the statement are:

"I am therefore convinced from a preponderance of the evidence and the record as a whole that the primary motive of Respondent in laying off its employees on November 15 and November 29, 1957, was retaliation against those employees identified with the organizational campaign and to defeat the union in the pending election on December 11, 1957."

That the Court was not under any misapprehension is evident in the following quotation from our opinion, the italicized portion of which is quoted in the Board's petition for rehearing:

"This is not a case where conflicting inference of equal weight may be drawn from the record. Looking at this record as a whole, we have to say that the Company was primarily motivated by economic reasons. We fail *to understand the blanket finding of discriminatory discharges.* The blanket is too short: if we pull it up to cover our ears, it exposes our toes. *If all forty-seven employees were discriminatorily discharged,* it seems to us that *the complaint should not have been limited to twenty-three employees.* And, if each employee, as an individual, was discriminatorily discharged, there should have been a finding as to each. The easy way out of making a blanket finding might be acceptable if, but only if, all or a disproportionate number of the employees had been union members or union adherents. It *is wholly unacceptable when half of those discharged were not union members or engaged in union activities,* and, considering only the evidence favorable to the Board's finding, a scant twenty-one (nineteen, according to the Company) were known as union sympathizers. Knowledge by an employer of the discharged employees' union activities is a vital element in the proof of a violation of Section 8(a) (3). Tampa Times Co. v. N. L. R. B., 5 Cir., 1952, 193 F.2d 582; N. L. R. B. v. Shen-Valley Meat Packers, Inc., 4 Cir., 1954, 211 F.2d 289. Here, where the dismissals are separate incidents and there is no evidence that union adherents were treated more severely than others, a blanket finding evades the responsibility placed on the board and, ingenuous-

ly, attempts to evade the burden of proof the law places on the General Counsel." 293 F.2d at 309.

■ The Court was well aware of the fact that the Board, naturally enough, decided only the validity of the discharges of the laid-off employees named in the complaint. We say, however, that in reaching this decision, the Examiner and the Board relied on the blanket finding that all of the forty-seven discharges, the reduction in force, were discriminatory discharges. This would be understandable if the evidence had showed discrimination in each instance and if there had been a finding as to each individual. It would have been understandable if the evidence had shown that a disproportionately large number of the discharged employees were engaged in union activities. The fact is that no evidence was introduced as to half of the discharged employees, those not named in the complaint. As to those named in the complaint, the evidence was conflicting. We think therefore that this is not a case in which it is proper to rely on a blanket finding. Taking the record as a whole, and considering the respondent's strong showing that the reduction in force was because of declining sales and the 1957 recession, the Court feels compelled to hold that the Board's decision as to discharges is not supported by the evidence.

■ (2) In its petition the Board pointed out that there is no evidence in the record to support the Court's statement that "half of those discharged were not union members or engaged in union activities," and that no such contention had been made by respondent before the Board or in its brief to this Court. The Court was in error. The Court should have stated that there is no evidence in the record as to the union membership or union activities of the discharged employees who were not listed in the complaint. We consider this error of insufficient importance to justify granting a rehearing.

The petition for rehearing is

Denied.